<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

</div>

_____

|  |  |  |
|---|---|---|
| **BARNSTABLE COUNTY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 17-40002** |
| **3M COMPANY, CHEMGUARD, INC.,** | ) | |
| **BUCKEYE FIRE EQUIPMENT COMPANY,** | ) | |
| **UNITED TECHNOLOGIES CORPORATION,** | ) | |
| **NATIONAL FOAM, INC., JOHN DOE** | ) | |
| **DEFENDANTS 1-49 AND TYCO FIRE** | ) | |
| **PRODUCTS LP,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

_____)

<div align="center">

**MEMORANDUM AND ORDER**

</div>

**CASPER, J.**                                                    **December 18, 2017**

## I.    Introduction

Plaintiff Barnstable County has filed this lawsuit against 3M Company ("3M"), Chemguard, Inc. ("Chemguard"), Buckeye Fire Equipment Company ("Buckeye"), United Technologies Corporation ("United Tech"), National Foam, Inc. ("National Foam"), Tyco Fire Products LP ("Tyco") and John Doe Defendants 1-49 (collectively, "Defendants"). D. 1. Barnstable County alleges that Defendants manufactured and sold a firefighting agent that contained chemicals that present risks to human health and the environment, which led to a breach of the implied warranty of merchantability and constituted negligence. Id. ¶¶ 1-6, 60-74. Plaintiffs also seek indemnification and contribution for costs and damages incurred as well as a declaratory judgment. Id. ¶¶ 75-93. 3M, Chemguard, Tyco, United Tech and Buckeye have filed motions to dismiss. D. 42; D. 48; D. 54; D. 57. National Foam has filed a motion for joinder in Tyco and

Chemguard's motion to dismiss. D. 52; D. 83. Tyco, Chemguard and United Tech separately request this Court to take judicial notice of various documents. D. 50; D. 56. For the reasons stated below, the Court GRANTS in part and DENIES in part Tyco and Chemguard's request for judicial notice, D. 50, and GRANTS in part and DENIES in part United Tech's request for judicial notice, D. 56. For the reasons below, the Court GRANTS IN PART 3M's motion to dismiss, D. 42, GRANTS IN PART Tyco and Chemguard's motion to dismiss, D. 48, GRANTS IN PART United Tech's motion to dismiss, D. 54, and GRANTS IN PART Buckeye's motion to dismiss, D. 57.

## II.     Standards of Review

### A.     Fed. R. Civ. P. 12(b)(1)

A defendant can move to dismiss an action based upon a lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). "This rule is a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction" including those challenges "grounded in considerations of ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001) (collecting cases). When considering a motion to dismiss for lack of subject matter jurisdiction, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). The Court, however, may also look beyond the pleadings to any evidentiary materials submitted by the parties to determine whether it has jurisdiction. Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016).

### B.     Fed. R. Civ. P. 12(b)(6)

The Court will grant a motion to dismiss pursuant to Rule 12(b)(6) if the complaint fails to plead sufficient facts that "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). At this stage, the Court must "assume the truth of 'the raw facts' set forth in the complaint." In re Ariad Pharm., Inc. Sec. Litig., 842 F.3d 744, 750 (1st Cir. 2016) (quoting In re Bos. Sci. Corp. Sec. Litig., 686 F.3d 21, 27 (1st Cir. 2012)). The Court, however, need not consider "naked assertion[s] devoid of further factual enhancement." San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 471 (1st Cir. 2012) (quoting Twombly, 550 U.S. at 557)). Similarly, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)) (internal quotation mark omitted).

"When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter" because "if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." Déniz v. Municipality of Guaynabo, 285 F.3d 142, 149-50 (1st Cir. 2002) (citing Ne. Erectors Ass'n of the BTEA v. Sec'y of Labor, Occupational Safety & Health Admin., 62 F.3d 37 (1st Cir. 1995)).

## III. Factual Background

Unless otherwise noted, the following summary is based upon the factual allegations in the complaint, D. 1, and are accepted as true for the consideration of the Defendants' motions to dismiss.

### A. **PFOS and PFOA**

Aqueous film forming foam ("AFFF") is a firefighting agent that was developed in the 1960s as an alternative to the existing protein-based firefighting foams. Id. ¶ 29. AFFF contains

a class of chemicals known as perfluoroalkyl substances ("PFAS"). <u>Id.</u> ¶¶ 16-17. Specifically, the AFFF manufactured by Defendants contained fluorinated surfacants perfluorooctanesulfonic acid ("PFOS") and perfluuooctanoic acid ("PFOA") or its precursors. <u>Id.</u> ¶ 3. Both PFOS and PFOA are chemicals that are resistant to metabolic and environmental degradation, such that they persist in the environment and the human body and have the potential to bioaccumulate and biomagnify in wildlife. <u>Id.</u> ¶¶ 19-20. In a similar vein, PFOS and PFOA degrade very slowly, if at all, in groundwater and can migrate from soil to groundwater. <u>Id.</u> ¶ 22. Typical municipal water treatment plants are unable to filter or treat PFOS and PFOA. <u>Id.</u> ¶ 24.

A number of health risks result when humans are exposed to PFOS and PFOA. <u>Id.</u> ¶ 26. Furthermore, there is at least some evidence that suggests that PFOS and PFOA are possibly carcinogenic to humans. <u>Id.</u> ¶¶ 27-28.

**B.**     <u>**The Fire Training Property**</u>

Enoch Cobb ("Cobb") was the owner of approximately one hundred acres of land (the "Property") in and around the Town of Barnstable (the "Town"). <u>Id.</u> ¶ 33. At his death, Cobb bequeathed the Property to the Town through a trust. <u>Id.</u> On or around June 1, 1956, the Town leased the Property to Barnstable County on the condition that the Property be used for a firing training school, which was to provide training in combatting, controlling and extinguishing fires to the fire departments and districts in Barnstable County. <u>Id.</u> ¶¶ 34-35. The Town entered into two more similar leases with Barnstable County, one of which again restricted the use of the land to fire training and the second of which included a condition that the land only be used for police and fire training purposes. <u>Id.</u> ¶¶ 36-37. Finally, in May of 1983, Barnstable County purchased the Property from the trust. <u>Id.</u> ¶¶ 38-39.

Since 1956, firefighters, fire brigades, private industry, fire departments and fire districts have used the Property to complete fire training, including practice of firefighting techniques with the use of live fires and the application of AFFF—a firefighting agent used for fighting Class B fires. Id. ¶¶ 2, 41. Trainings at the Property included the use of AFFF until about 2009. Id. ¶ 41.

### C. The Town's Water Supply

In the 1970s, Barnstable Water Company installed public water supply wells ("the Wells") that were proximate to and downgradient of the Property. Id. ¶ 45. The Wells' water provided Town residents with drinking water from the 1970s until 2005. Id. ¶ 46. In May 2005, the Town acquired the Barnstable Water Company and the Wells, and thereafter contracted with the Connecticut Water Company to continue water management and operations under the Town's direction. Id. ¶¶ 47-48. Currently, the Town's water system consists of twelve well pumping stations and provides drinking water to approximately 18,000 residents. Id. ¶ 49.

In November 2013, groundwater samples were collected from the Property and the analysis confirmed that PFOS was present in the Property's groundwater. Id. ¶ 54. Groundwater samples taken downgradient of the Property in June of 2014 also revealed the presence of PFOS. Id. In July 2015, the County activated a pump and treat system to capture a defined high concentration level of PFOS in the groundwater. Id. ¶ 55. In January 2016, the Town notified the County that its groundwater drinking water supply was contaminated with PFOS. Id. ¶ 50. The Town asserts that this contamination resulted from the use of AFFF by the County at the Property. Id.

### D. The Litigation between the Town and the County and the County's Response to the Alleged Contamination

After alerting the County to the PFOS water contamination, the Town filed a lawsuit against the County, seeking costs and damages in excess of five million dollars. Id. ¶¶ 50-51. The litigation is currently pending in Barnstable Superior Court. Id. ¶ 51.

In August 2016, the Massachusetts Department of Environmental Protection ("DEP") issued a Notice of Responsibility to the County, requiring the County to prepare an Immediate Response Action ("IRA") Plan to perform immediate actions in response to the release of PFOS to, at and from the Property. Id. ¶ 56. Accordingly, the County submitted an IRA Plan to the DEP, which included action items of undertaking further investigation and assessment as well as evaluating long-term and emergency remedial actions to be taken. Id. ¶ 57. In addition, the County has committed substantial funds to investigate the sources of the alleged PFOS and PFOA contamination, treat groundwater emanating from the Property and extract and properly treat and/or dispose of all contaminated soils. Id. ¶ 58. The County continues to investigate and take remedial activities resulting from the presence of PFOS, PFOA and other PFAS chemicals in the soil and groundwater. Id. ¶ 59.

## IV.    Procedural History

Barnstable County instituted this action on January 9, 2017. D. 1. 3M filed a motion to dismiss. D. 42. Thereafter, Chemguard and Tyco, United Tech and Buckeye filed their respective motions to dismiss. D. 48; D. 54; D. 57. The Court heard the parties on the pending motions and took these matters under advisement. D. 101.

## V.    Request for Judicial Notice

As a precursor to their arguments for dismissal, Defendants urge this Court to take judicial notice of several documents filed in the Town's state court action against the County and several reports. See D. 43; D. 50; D. 56; D. 58.

At the motion to dismiss stage, "[o]rdinarily . . . any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden." Rock v. Lifeline Sys. Co., No. 13-cv-11833-MBB, 2014 WL 1652613, at *11 (D. Mass. Apr. 22, 2014) (quoting

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  Nevertheless, in ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'"  Lydon v. Local 103, International Brotherhood of Electrical Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original); see Rock, 2014 WL 1652613, at *12.  Accordingly, the Court can take notice and consider any facts at the motion to dismiss stage that are "not subject to reasonable dispute" because that fact is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  Lopes v. Riendeau, 177 F. Supp. 3d 634, 666 (quoting Fed. R. Evid. 201(d)) (internal quotation mark omitted).  "A high degree of indisputability is the essential prerequisite" to taking judicial notice of any fact.  Fed. R. Evid. 201, advisory committee notes to subdivision (a).

A.     **The Court Takes Judicial Notice of the Pleadings from the Related State Court Action**

Defendants Tyco, Chemguard, Buckeye and United Tech request that the Court take judicial notice of the answer, counterclaim and third-party complaint from the state court action as well as the Town of Barnstable's complaint from the state court action.  D. 50 ¶ 10; D. 58 at 7; see D. 56 at 2-3.

It is "well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."  Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990); see Giragosian, 547 F.3d at 66.  Generally, court filings are recognized not for the truth of the matters asserted within them, but instead only to establish the fact that related litigation has been initiated or to establish that the fact that documents have been filed in that related case.  See, e.g., Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth., 492 F.

App'x 567, 568–69 (6th Cir. 2012); Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008); see Brody v. Hankin, 145 F. App'x 768, 771-73 (3d Cir. 2005) (concluding that the lower court impermissibly considered the facts found within a related arbitration proceeding instead of solely considering the existence of an arbitration award). That is, the Court may take judicial notice of the related state court documents "to establish the existence of the [related] litigation, what claims were asserted, and what issues were argued and decided." Clark v. Kitt, No. 12-cv-8061 CS, 2014 WL 4054284, at *8 (S.D.N.Y. Aug. 15, 2014), aff'd, 619 F. App'x 34 (2d Cir. 2015).

As a result, the Court takes judicial notice of the state court documents proffered by Defendants to confirm the existence of the related state court action, the claims asserted by the Town against the County and what issues were argued and decided to the extent that any of the foregoing is relevant to deciding this motion to dismiss. See, e.g., Clark, 2014 WL 4054284, at *6; Glob. Relief v. N.Y. Times Co., No. 01-cv-8821, 2002 WL 31045394, at *4–5 (N.D. Ill. Sept. 11, 2002). The Court will not, however, take the allegations lodged in the Town's complaint, the County's counterclaim or the third-party complaint for the truth of the matter asserted—i.e., issues still reasonably in dispute—because doing so would constitute "a plainly improper use of the doctrine." In re Niaspan Antitrust Litig., 42 F. Supp. 3d 735, 754 (E.D. Pa. 2014).

This, however, does not resolve the parties' dispute as to all of the state court filings. Tyco and Chemguard assert that one portion of the state court documents—alleged admissions made by the County in its state court answer and counterclaim to the Town's complaint—be considered for their truth in this federal litigation. D. 50 ¶ 10; D. 80 at 9-10. That is, Tyco and Chemguard contend that that this Court should assume that the County adopted a policy in 2009 that prohibited the use of all Class B AFFF on the Property because the County states that it did so in its answer

and counterclaim in the Town's state action against the County. D. 80 at 9-10. Given that the facts as to AFFF use on the Property are still subject to reasonable dispute, they are not suitable for judicial notice here at this juncture.

For these reasons, the Court will take judicial notice of the state court filings for the limited purpose noted above.

**B.** **The Court Takes Judicial Notice of the Silent Spring Report**

Defendants next move to have the Court take judicial notice of the Silent Spring report since the County incorporated this report into its complaint. D. 50 ¶ 14; D. 56 at 5-6; D. 58 at 7. Defendants urge the Court to consider the study as a means to establish when the County was put on notice that a problem with PFOS or PFOA may have existed. D. 80 at 8-9. The Court agrees that it may consider the Silent Spring report for this purpose. That is, when a complaint asserts factual allegations that are dependent upon or linked to a particular document, that document effectively merges into the pleadings for the trial court's review. Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 16-17 (1st Cir. 1998). Because the County references the study in its complaint and does not contest the authenticity of the version of the study attached by Defendants, see D. 64 at 9-10, the Court will consider the report in deciding this motion to dismiss. See McCourt v. TAP Pharm. Prod., Inc., No. 07-cv-10374-GAO, 2008 WL 2129825, at *3-4 (D. Mass. May 20, 2008).

Although the County stresses that the accuracy of the scientific determinations in the report can be reasonably questioned, D. 63 at 7; D. 64 at 9-10, the Court need not consider this argument as it will only consider the report as to the County's notice of any possible chemical contamination.

**C.    The Court Takes Judicial Notice of the Needs Assessment Report, the DEP NOR Reports and the Immediate Response Action Report but Does Not Take Judicial Notice of the PowerPoint Slide**

Defendants next request that the Court take judicial notice of the Needs Assessment Report, the DEP NOR reports and the Immediate Response Action (the "IRA") report because each is a public record, report or filing that the Court can consider at this time with respect to Defendants' inquiry notice affirmative defense. See, e.g., D. 50 ¶¶ 9, 11; D. 80 at 8-9. The Court agrees. First, the Court takes judicial notice of the Needs Assessment report because it is an official investigative report issued by a County committee and is thus susceptible to judicial notice. See Kader v. Sarepta Therapeutics, Inc., No. 14-cv-14318-ADB, 2016 WL 1337256, at *11 (D. Mass. Apr. 5, 2016) (taking judicial notice of FDA official statements published on a government website); United States v. Kiewit Pac. Co., No. 12-cv-02698-JST, 2013 WL 5770514, at *5 (N.D. Cal. Oct. 24, 2013) (taking judicial notice of government investigative reports). That said, the Court will only take into consideration the existence and contents of the document but will not assume the truth of the findings asserted therein because the "[t]he credibility of such evidence will vary according to the thoroughness and impartiality with which the committee conducted its investigation." Alharbi v. Beck, 62 F. Supp. 3d 202, 209 (D. Mass. 2014).

In addition, the Court takes judicial notice of the 1986 NOR report, the 2006 NOR report and the 2016 NOR report because each is the type of public record of which the Court can take notice. See Staehr, 547 F.3d at 425 (affirming lower court decision to take judicial notice of assertions made in regulatory filings for the purpose of triggering inquiry notice); Kader, 2016 WL 1337256, at *10 (taking judicial notice of agency's official statement); Kiewit Pac. Co., 2013 WL 5770514, at *5 (taking notice of government investigative reports); In re Vertex Pharm. Inc., Sec. Litig., 357 F. Supp. 2d 343, 352 n.4 (D. Mass. 2005) (taking judicial notice of agency's written

policy). For similar reasons, the Court takes judicial notice of the IRA report filed with the DEP. See OrbusNeich Med. Co., BVI v. Bos. Sci. Corp., 694 F. Supp. 2d 106, 111 (D. Mass. 2010). For these reasons, the Court takes judicial notice of the Needs Assessment report, the DEP NOR reports and the IRA report.[1]

United Tech further requests that the Court take judicial notice of a screen shot of a PowerPoint slide uploaded to the County's YouTube page. D. 56 at 3-4. This screenshot, however, stands on different ground than the previously discussed documents. The First Circuit has explained that simply "invoking the label 'public record'" is "too broad a term to rely on" for establishing whether the Court can take judicial notice of a document. Freeman, 714 F.3d at 37. Here, the Court does not see how this document bears the same level of reliability and accuracy as the other public documents judicially noticed in this case or those previously recognized by the First Circuit. See Kiewit, 2013 WL 5770514, at *5 (declining to take judicial notice of two presentations produced by government agencies because they were not official government reports). Thus, the Court will not take judicial notice of the PowerPoint slide.

## VI.    Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

### A.    <u>Ripeness</u>

As a basis for its motion to dismiss pursuant to Fed. R. Civ. P 12(b)(1), Defendants contend that the County's claims for indemnification, contribution and declaratory judgment are not ripe for judicial review. D. 43 at 14; D. 49 at 18; D. 52 at 1; D. 58 at 13.

Under Article III, cases that are not yet ripe cannot be heard by the district court. See Reddy v. Foster, 845 F.3d 493, 500-01 (1st Cir. 2017). Indeed, "ripeness doctrine seeks to prevent

---

[1] The Court may also consider the 2016 NOR report and the IRA report for the independent reason that each document is fairly incorporated into the complaint. See Rodi, 389 F.3d at 12; Beddall, 137 F.3d at 16-17; see D. 1 ¶¶ 56-57.

the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Id. at 500 (quoting Texas v. United States, 523 U.S. 296, 300 (1998)). "[A] claim is ripe only if . . . the issues raised are fit for judicial decision at the time the suit is filed and that the party bringing suit will suffer hardship if 'court consideration' is withheld." Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey, 844 F.3d 318, 326 (1st Cir. 2016). "[T]he critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all" such that the Court avoids issuing decisions based upon speculative facts or hypotheticals. Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 536 (1st Cir. 1995) (quoting Mass. Ass'n of Afro-Am. Police, Inc. v. Bos. Police Dep't, 973 F.2d 18, 20 (1st Cir. 1992)) (internal quotation marks omitted). The second ripeness inquiry, hardship, centers upon "the hardship that may be entailed in denying judicial review," id., and "whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." Town of Barnstable v. O'Connor, 786 F.3d 130, 143 (1st Cir. 2015) (quoting Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2322, 651 F.3d 176, 188 (1st Cir. 2011)). Normally, both fitness and hardship must be satisfied to demonstrate ripeness. Courtemanche v. Gen. Servs. Admin., 172 F. Supp. 2d 251, 258 (D. Mass. 2001). When considering whether an issue is ripe and thus whether the Court has jurisdiction to hear the lawsuit, it is the plaintiff's burden to allege facts that demonstrate sufficient ripeness. Reddy, 845 F.3d at 501.

**B.      The County May Amend as to Count VI**

Defendants 3M, Tyco, Chemguard, National Foam and Buckeye argue that the County's claim for indemnification for damages, costs or equitable relief incurred from the County's

litigation with the Town is not ripe for judicial review.[2]  D. 43 at 14; D. 49 at 18; D. 52 at 1; D. 58 at 13;  see D. 1 ¶¶ 81-85.  Specifically, they contend that the indemnification claim is not ripe because the state action has not yet determined if the County is a blameless entity or if the County is liable to the Town.  See, e.g., D. 43 at 15, 15 n.37.

When a claim is "contingent upon events that may not occur as anticipated or may not occur at all," the Court should dismiss that claim as unripe.  Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847-48 (1st Cir. 1990).  In the context of indemnification, district courts within the First Circuit have dismissed or stayed actions for indemnity on the basis that the claim is not ripe because the party seeking indemnification has not yet been found liable for any costs or damages.  Subaru of New England, Inc. v. Gen. Ship Corp., 142 F.R.D. 578, 581 (D. Mass. 1992); see Urological Surgery Prof'l Ass'n v. Fecteau Benefits Grp., Inc., 359 F. Supp. 2d 24, 26 (D.N.H. 2005); Pardee v. Consumer Portfolio Servs., Inc., 344 F. Supp. 2d 823, 836-37 (D.R.I. 2004) (collecting cases).  Other circuits have similarly decided to dismiss or stay actions for indemnification pending the resolution of the underlying lawsuits.  See, e.g., Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC, 451 F. App'x 745, 749 (10th Cir. 2011) (concluding that the court could not yet consider whether an insurer had a duty to indemnify the insured because the insured's liability had not yet been established); St. Paul Fire & Marine Ins. Co. v. Nonprofits United, 91 F. App'x 537, 538 (9th Cir. 2004) (explaining that the claim "for equitable relief, indemnity, and contribution is contingent on a future finding [of liability]," meaning "the cause of action is not ripe").

---

[2]  National Foam has moved for joinder to Tyco and Chemguard's motion to dismiss, D. 52, and for joinder in Tyco and Chemguard's reply in further support of its motion to dismiss, D. 83.  The Court has granted both motions for joinder.

Although the state court action was resolved by agreement, the Court understands that there was no agreement about liability. D. 105-2 at 5. The supplement filing by the County does not indicate the parties' position regarding ripeness at this juncture. Accordingly, the Court will allow the County to amend as to Count VI to account for this development.

### C.     The County May Also Amend as to Count VII

In similar vein to their indemnification argument, Defendants also assert that the County's contribution claim in Count VII is not yet ripe because the County has not yet incurred expenses from a judgment or settlement with the Town. See, e.g., D. 43 at 14-15; D. 58 at 13. Massachusetts law provides for a right to contribution "where two or more persons become jointly liable in tort for the same injury to person or property," Mass. Gen. L. c. 231B, § 1(a), and one tortfeasor "has paid more than his pro rata share of the common liability," Mass. Gen. L. c. 231B, § 1(b). That right, however, is not ripe until the joint tortfeasor pays the tort victim more than his fair share of the judgment or settlement. Robertson v. McCarte, 13 Mass. App. Ct. 441, 443 (1982); Sword & Shield Rest., Inc. v. Amoco Oil Co., 11 Mass. App. Ct. 832, 833 (1981). That is, the right to contribution only accrues after a tortfeasor has paid more than its pro rata share of liability to a plaintiff and remains unripe when the potential claim for contribution is based upon contingent events like a speculative future payment beyond what it owes. Scott v. Rest. Techs., Inc., No. 14-cv-12614-IT, 2015 WL 1962128, at *4 (D. Mass. May 1, 2015); see N. Ins. Co. of N.Y. v. Bongard S.A.S., No. 08-cv-11089-MBB, 2011 WL 1584355, at *1 n.3 (D. Mass. Apr. 26, 2011). In this case, the County has not been found liable for damages owed to the Town, but has entered into a

settlement in the state court action. D. 105 at 1. Thus, the Court will also allow the County to amend as to Count VII.[3]

## VII. Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

### A. The Court Dismisses Counts I, II and III Without Prejudice Against the Defendants

#### 1. The Court Will Not Dismiss Counts I, II and III as Time-Barred

Defendants argue that the Court should dismiss the County's claims of negligence and breach of the implied warranty of merchantability—Counts I, II and III—because these claims are time-barred. D. 43 at 13, 17-20; D. 49 at 11-13; D. 55 at 15-16; D. 58 at 8-10. Defendants further assert that Counts IV and V must also be dismissed as time-barred because these counts seek remedies in connection with the barred claims in Counts I, II and III. See, e.g., D. 43 at 17, 20.

"Although most motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are 'premised on a plaintiff's putative failure to state an actionable claim,' such a motion may also be premised on the 'inevitable success of an affirmative defense.'" Azevedo v. U.S. Bank N.A.,

---

[3] Defendants 3M, Tyco, Chemguard and National Foam argue that because there is no ripe controversy as to the indemnification and contribution claims in Counts VI and VII, the County's request for declaratory judgment in Count VIII should likewise be dismissed for lack of ripeness. D. 43 at 16; D. 49 at 18-19; D. 52 at 1. This argument does not support dismissal pursuant to Fed. R. Civ. P. 12(b)(1). In Count VIII, the County requests that the Court declare that Defendants are liable for the County's past and future response costs and damages arising out of the AFFF contamination at the Property. D. 1 ¶ 93. That is, the County does not singularly request a declaratory judgment based upon the damages that the County may eventually owe to the Town as a result of the pending state court action. Instead, the County seeks a declaratory judgment under Count VIII for the separate and distinct damages that the County has already incurred in costs for the contamination at its own property. See id. Thus, dismissal of Count VIII is not warranted. 3M additionally asserts that the Court should dismiss Count VIII because a declaratory judgment would not terminate the entire controversy as the state court action is still pending. Mass. Gen. L. c. 231A § 3 provides that "[t]he court may refuse to render or enter a declaratory judgment or decree where such judgment or decree . . . would not terminate the uncertainty or controversy giving rise to the proceedings." Although the Court may choose to dismiss Count VIII pursuant to c. 231A § 3, it is not mandated to do so and declines to grant dismissal on this basis.

167 F. Supp. 3d 166, 169 (D. Mass. 2016) (quoting Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)).  Thus, the Court can dismiss a case based upon the affirmative defense of the statute of limitations, but it must only do so when "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude."  Nisselson, 469 F.3d at 150.

Under Massachusetts law, both negligence and the implied warranty of merchantability have three-year statutes of limitations.  See Andersen v. Lasalle Bank Nat'l Ass'n, No. 15-cv-30107-MGM, 2016 WL 3093375, at *4 (D. Mass. June 1, 2016), appeal dismissed, 16-cv-1927 (2016) (stating that negligence claims have a three-year statute of limitations); Donovan v. Philip Morris USA, Inc., 65 F. Supp. 3d 251, 280 (D. Mass. 2014).  "Under Massachusetts law, the three-year statute of limitations in tort actions begins to run at the time of the injury or when the injury becomes known to the plaintiff."  Gamboa v. MetroPCS Mass., LLC, No. 16-cv-10742-GAO, 2017 WL 1227916, at *2 (D. Mass. Mar. 31, 2017).

When there is an inherently unknowable danger, "the discovery rule provides that causes of action do not accrue until the plaintiff learns, or reasonably should have learned, that she has been harmed by the defendant's conduct."  Town of Princeton v. Monsanto Co., Solutia Inc., 202 F. Supp. 3d 181, 187 (D. Mass. 2016) (citing Taygeta Corp. v. Varian Assocs., Inc., 436 Mass. 217, 229 (2002)).  Under this rule, "a cause of action accrues when a person (1) knows or has sufficient notice that s/he was harmed; and (2) knows or has sufficient notice of the cause of the harm."  Lareau v. Page, 39 F.3d 384, 388 (1st Cir. 1994); see Bowen v. Eli Lilly & Co., 408 Mass. 204, 207 (1990).  That is, "the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury."  Lareau, 39 F.3d at 388; see Bowen, 408 Mass. at 208.  "A plaintiff may be put on

'inquiry notice' where it is informed of facts that would suggest to a reasonably prudent person in the same position that an injury has been suffered as a result of the defendant's conduct." Commonwealth v. Tradition (N. Am.) Inc., 91 Mass. App. Ct. 63, 71 (2017). Once on notice, it is the plaintiff's responsibility to inquire into its possible injury and not rest on its rights. Pitts v. Aerolite SPE Corp., 673 F. Supp. 1123, 1128 (D. Mass. 1987). "Application of this standard often gives rise to factual inquiry and those factual disputes regarding the date upon which the plaintiff knew or should have known of her claim belong to the trier of fact." Town of Princeton, 202 F. Supp. 3d at 188 (citing Wolinetz v. Berkshire Life Ins. Co., 361 F.3d 44, 48 (1st Cir. 2004)).

Defendants argue that the statute of limitations has run on the County's negligence and breach of the implied warranty of merchantability claims because the County had knowledge of the alleged injury and its possible cause several years prior to filing the instant lawsuit. See, e.g., D. 58 at 2. The Court, however, cannot determine at this juncture if the County had sufficient inquiry notice for the statute of limitations to have begun running as early as 2009 or 2013. Courts often refrain from concluding that the statute of limitations has run at the motion to dismiss stage because determining when the discovery rule triggered the statute of limitations is "a fact-sensitive enterprise," Warren Freedenfeld Assocs., Inc. v. McTigue, 531 F.3d 38, 44 (1st Cir. 2008), where "the question when a plaintiff knew or should have known of its cause of action is one of fact that will be decided by the trier of fact," Taygeta Corp., 436 Mass. at 229. Indeed, the "application of Massachusetts' discovery rule requires a careful analysis of the factual record," Fidler v. Eastman Kodak Co., 714 F.2d 192, 193 (1st Cir. 1983), wherein the question of notice typically involves "an individualized fact-intensive inquiry," In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig., 76 F.Supp.3d 294, 309 (D. Mass. 2015). There may be circumstances in which the Court may dismiss based upon inquiry notice because "the pleader's allegations leave no doubt

that an asserted claim is time-barred," Epstein v. C.R. Bard, Inc., 460 F.3d 183, 188-89 (1st Cir. 2006), but such cases are few and far between, see In re Lupron Mktg. & Sales Practices Litig., 295 F. Supp. 2d 148, 183–84 (D. Mass. 2003).

This case is not one of the instances in which the Court must dismiss claims as time-barred under the discovery rule. Here, examining the complaint alone, the Court cannot conclude with certitude that the County's claims for breach of warranty and negligence are time-barred. Taking the allegations as a whole, the County asserts that PFOS and PFOA are complex chemicals that cause harm to the environment and human health, D. 1 ¶¶ 16-28, that the AFFF firefighting foam used on the Property through 2009 contained PFOS and PFOA, id. ¶ 41, and that PFOS and PFOA seeped into the groundwater at harmful levels and thus caused an injury to the County, id. ¶¶ 45-59. Nothing in the broad strokes of these allegations indicate that the County untimely filed its lawsuit.

The reference to the Silent Spring report issued in 2010, id. ¶ 53, does not necessitate a different outcome. Although the complaint mentions that water samples were taken in 2009 and the Silent Spring report issued its findings as to the presence of PFOS in 2010, the complaint specifies that these were water samples of the Hyannis public supply wells and distribution system, id., so the Court cannot resolve with certainty that this triggers inquiry notice as early as 2009 for the County as to contamination on the Property.

Similarly, notifications from the Town and DEP do not necessarily demonstrate that the County's suit is time-barred. The complaint states that the Town notified the County that its groundwater drinking water supply, which was downgradient to the Property, was contaminated with PFOS in 2016. Id. ¶¶ 45, 50. Aside from the Town, the allegations also indicate that the DEP issued a Notice of Responsibility to the County regarding the PFOS levels and required the County

to take immediate response actions related to the PFOS contamination.  Id. ¶¶ 56-57.  In essence, the notices from both the Town and DEP could be dates upon which a reasonable party should have considered that defendants caused a PFOS-related injury to the County.  Even if that were the case, however, neither raises a statute of limitations ground for dismissal.  That is, both assertions suggest that the County's inquiry notice triggered in 2016, a date within three years of the filing of this complaint in 2017.  Thus, the Court cannot dismiss for failure to comply with the statute of limitations when examining the face of the complaint alone.

As mentioned, however, the Court may additionally consider the judicially noticed documents when deciding whether the County's claims should be dismissed as untimely.  See Nisselson, 469 F.3d at 150.  In this instance, these documents do not warrant a different outcome.  Defendants first point to the Silent Spring Report and assert that the report put the County on sufficient notice as to its injury and its possible cause.  D. 43 at 18; D. 55 at 19-20; D. 58 at 9.  The Silent Spring Report was published in 2010 by a non-profit organization that investigates the environmental links between chemicals and cancer.  D. 43 at 9 n.11; D. 43-3.  First, while the report does indicate that a number of the water samples tested contained PFOS, the report expressly states that "[n]o samples exceeded the health-based guidelines for these chemicals."  D. 43-3 at 13.  It continues that the detected PFOS levels were one-half of the EPA's short-term provisional health advisory value of 200 ng/L and one-third that of the Minnesota Department of Health's health-based value of 300 ng/L for PFOS.  Id. at 13.  Although the report indicated that PFOS was present in the tested water samples, it also suggested that the amount of PFOS may not have been at injurious levels.  In addition, the report may not have put the County on notice of the potential cause of the contamination.  Specifically, it teaches that the "septic systems are likely the primary source of emerging contaminants in Cape drinking water supplies," that "the Barnstable Municipal

Airport may be a source" because "[t]he highest concentrations of [PFOS and PFOA] were found in samples collected from two wells and a distribution system known to be contaminated by a plume . . . from the Barnstable Municipal Airport" and that other studies "have shown that groundwater downgradient of airports can be contaminated by PFOS and PFOA." D. 43-3 at 12-13, 16. That is, the report indicates possible sources for the contamination outside and distinct from the Property and its activities. Finally, the Silent Spring Report focuses upon testing water samples from drinking water supply wells, see D. 43-3 at 9, not on soil and groundwater; simply because the County may have known that area well water was contaminated with PFOS and PFOA does not necessitate that it believed that the Property was similarly contaminated.[4]

Defendants also rely upon the state court pleadings to demonstrate that the County's claim is untimely because it may have known of contamination to the Town as early as 2009. For instance, Defendants highlight that the County asserts in its counterclaim that PFOS has been known to be present in the Town's public water supply system since at least 2009, D. 50-1 at 19 ¶ 46, and that the County assisted the Town in its remediation efforts, id. at 19 ¶ 49, such that the County should have known that the contamination to the Town was emanating from the Property since 2009. As explained, however, simply because the County asserts it was aware that the Town's drinking water was contaminated does not compel the Court to conclude that the County should have been aware that its soil and groundwater were similarly harmed. This is particularly so when considering the remainder of the County's counterclaim allegations. Therein, the County

---

[4] United Tech further asserts that the County's Immediate Response Action Plan illustrates how the County's claim is untimely because it states that the director of the fire training program was notified of the Silent Spring report. D. 55 at 19. The Court disagrees. First, the report does not indicate when the director was made aware of the 2010 Silent Spring report. Second, as discussed above, it remains unclear whether the Silent Spring report put the County on notice of its injury and the possible cause.

alleges that the Town's wells already had some contamination issues when the Town acquired them, id. at 18 ¶ 43, and that the wells were located downgradient to the Barnstable Municipal Airport, id. at 18 ¶¶ 37-38, a possible source of the PFOS and PFOA contamination. Id. at 17 ¶¶ 34-35, 20-21 ¶¶ 62-66; see D. 43-3 at 12-13, 16 (teaching that airports may be the cause of PFOS and PFOA contamination). Thus, even when considering the County's answer and counterclaim, the County's assertions therein do not require the Court to conclude at this stage that the County had inquiry notice of contamination on the Property.

Likewise, allegations in the Town's complaint do not foreclose the County's claims against Defendants. The Town alleges that the County conducted sampling of its groundwater monitoring wells in the fall of 2013 and thereafter discovered that the soil and the groundwater downgradient from the Property contained PFOS. D. 50-2 ¶ 18. As previously explained, the Court takes notice of the Town's allegations being made, but does not take those statements for the truth of the matter asserted.

Similarly, Defendants request that this Court acknowledge the County's assertion it adopted a policy of prohibiting the use of all Class B AFFF at the Property once studies revealed the presence of PFOS in the Town's water supply in 2009. D. 43 at 18; D. 55 at 17. As explained, however, the Court will not consider this statement as an admission, see Gonzalez v. Walgreens Co., 918 F.2d 303, 305 (1st Cir. 1990), for purposes of the resolving the motions to dismiss.

Defendants have relied upon certain documents which do raise the question of whether the County was on notice about its possible injury and the cause of that injury in 2009 or 2013. See, e.g., D. 49 at 12-13; D. 58 at 9-10. However, numerous questions of fact remain, like whether the County took this as a precautionary measure to prevent possible injury to its own Property or whether the County had information regarding the level of PFOS contamination on the Property

at the time. Defendants further rely upon the 2016 NOR issued by the DEP, a report which states that the County initiated a subsurface environmental investigation in November 2013 to determine if PFAS chemicals had impacted the groundwater near the Property. D. 43-4 at 4. That document further provides that the concentration of PFOS detected amounted up to 3.9 µg/L in the groundwater and that surface water adjacent to the Property also contained PFOS. Id. Thus, there is at least some record that the County knew that contamination could be a problem as early as 2013. This document alone, however, is not enough to warrant dismissal at this stage. It raises the specter, but does not conclusively resolve, that the County was aware of its injury and the cause of that injury.

Further, courts have acknowledged that notice is an especially intricate factual inquiry in the case of toxic tort litigation. See Town of Princeton, 202 F. Supp. 3d at 189-90 (collecting cases); Doherty v. Admiral's Flagship Condo. Trust, 80 Mass. App. Ct. 104, 107-10 (2011) (reversing dismissal on untimeliness grounds because the court could not necessarily conclude that the date of injury was the date at which the water leak began, but instead should be keyed to when the resultant toxic mold created a hazardous contamination). For instance, assessing the date when a plaintiff was injured or should have realized he or she was injured may be difficult as a result of the complex nature of the chemical compounds responsible for the harm. See, e.g., In re Propecia (Finasteride) Prod. Liab. Litig., No. 12-cv-2049-JG-VVP, 2013 WL 3729570, at *7 (E.D.N.Y. May 17, 2013). The same appears to be true here from the limited set of documents before the Court at this juncture. Accordingly, the Court would be better positioned to assess whether the County's claim was timely at a later stage in this litigation and, therefore, does not dismiss for untimeliness.

Thus, the Court will not dismiss Counts I, II and III as time-barred. For these same reasons, the Court will not dismiss Counts IV and V as time-barred as they are based upon Counts I, II and III, none of which were dismissed for untimeliness.

<p style="text-align: center;">

2. *The Court Dismisses Counts I, II and III Without Prejudice Against Defendants for Failure to State a Claim*

United Tech additionally moves for dismissal based upon the argument that the County has not provided factual allegations that demonstrate that United Tech specifically has breached the implied warranty of merchantability or committed negligence. D. 55 at 10-15. At the motion hearing, United Tech asserted that this same logic applied to all other defendants with equal force, D. 102 at 10, and the other defendants requested for relief upon this basis. Id. at 26-27, 50.

To state a claim for negligence under Massachusetts law, "a plaintiff must allege that (1) the defendant owed the plaintiff a duty of reasonable care; (2) the defendant breached that duty; (3) damage resulted; and (4) the defendant's breach caused that damage." Saldivar v. Racine, 818 F.3d 14, 20-21 (1st Cir. 2016). To adequately allege an implied warranty of merchantability claim, the plaintiff must demonstrate that the defendant sold or manufactured the product that injured the plaintiff, the dangerous condition existed such that it was not suitable for the product's ordinary uses, the plaintiff used the product in its intended manner and the defective condition was the legal cause for the injury incurred. Provanzano v. MTD Prods. Co., 215 F. Supp. 3d 134, 138 (D. Mass. 2016). That is, both the implied warranty of merchantability and negligence doctrines demand that a plaintiff establish that the defendant breached a duty and that this breach was both the cause in fact and the proximate cause of the plaintiff's injury. See id. at 138-39.

Here, Defendants contend, in essence, that the County has not asserted allegations that pass muster under the plausibility standard because the complaint is devoid of specific allegations as to how each defendant caused the contamination at the Property by way of its hazardous AFFF

products. See D. 55 at 11-15. The Court agrees. The complaint alleges that AFFF was developed and then used on the Property from the 1960s through 2009 but without any specification as to which defendants' products were used on the premises throughout that fifty-year period. See D. 1 ¶¶ 29, 41. The complaint likewise omits any specifics regarding why the County believes each of the named defendants were the manufacturers of the AFFF that was actually used on the Property—as opposed to other AFFF manufacturer—and instead conclusorily asserts that each defendant made AFFF and is thus liable for the County's damages. D. 1 ¶¶ 2-5. This is not enough to survive the motion to dismiss stage.

This result is similar to Bulanda v. A.W. Chesterton Co., No. 11-cv-1682-AJS, 2011 WL 2214010 (N.D. Ill. June 7, 2011). There, the plaintiff brought tort-based claims against a number of corporations, asserting that these corporations negligently caused asbestos exposure. The court dismissed each claim because the complaint failed to include factual allegations linking each Defendant to the injury sustained and instead made "a number of generic allegations to the Defendants collectively" without explaining how each particular Defendant and their manufactured products caused the harm. Id. at *2. The same is true here where the County has only referenced the Defendants collectively as manufacturers of AFFF but provides no details to plausibly allege that each of these defendants and their products—as opposed to some other entities that create a similar product—are responsible for the County's injuries. Aguirre v. Amchem Prods. Inc., No. 11-cv-01907-PHX-FJM, 2012 WL 760627 (D. Ariz. Mar. 7, 2012) provides further support for this outcome. There, the court dismissed the plaintiffs' complaint alleging asbestos-related injuries because the complaint was devoid of "facts suggesting a temporal or geographic link" between the plaintiff's injuries and the asbestos products manufactured by defendants as distinguished from other asbestos products sold by other asbestos manufacturers. Id. at *2. Again,

the same is true here. The complaint speculates that each of the named Defendants is responsible for the PFOS and PFOA contamination but provides no basis for why these specific defendants as opposed to other AFFF manufacturers were the entities to have caused the County's injuries which were sustained over an estimated fifty year period. In fact, the County alleges claims against AFFF manufacturers John Does 1-49 in tandem with its claims against the named defendants. The County alleges that it did so in case discovery reveals that other, unnamed entities were actually responsible for the PFOS and PFOA contamination at the Property. This reinforces that the claims lodged against each named defendant are speculative in nature.

Other courts have similarly concluded that complaints of this nature do not pass the motion to dismiss stage. See Baldonado v. Avrinmeritor, Inc., No. 13-cv-833-SLR-CJB, 2014 WL 2116112, at *5-6 (D. Del. May 20, 2014), report and recommendation adopted, Baldonado v. Arvinmeritor, Inc., 2014 WL 2621119 (D. Del. June 10, 2014) (dismissing count with 34 defendants because the complaint did not plausibly establish that these particular defendants as opposed to other entities engaged in the alleged misconduct); Livingston v. 3M Co., No. 12-cv-01220-SVW-DTB, 2012 WL 12888108, at *3 (C.D. Cal. Apr. 17, 2012) (explaining that plaintiffs failed to raise their right to relief above a speculative level because plaintiffs only "alleged a handful of vague facts spanning a forty-year period" after naming "dozens of Defendants . . . without alleging any specific facts" as to any one defendant).

Neither case highlighted by the County compels a different outcome. Both Coleman v. Boston Scientific Corp., No. 10-cv-01968, 2011 WL 1532477 (E.D. Cal. Apr. 20, 2011), and Bausch v. Stryker Corp., 630 F.3d 546 (7th Cir. 2010), stand for the proposition that a plaintiff need not provide specific details related to the offending product to survive a 12(b)(6) motion. As explained in Bausch, it is not a "fatal defect" when a plaintiff "does not specify the precise defect

or the specific federal regulatory requirements that were allegedly violated" but provides basic information as to the allegedly offending product. Bausch, 630 F.3d at 558-60. Similarly, Coleman establishes that it is improper to "impos[e] on plaintiffs the burden of specifically identifying a device by reference to a specific product line or model number, without the benefit of discovery" and that general information about the malfunctioning device is sufficient. Coleman, 2011 WL 1532477, at *3. This is not the rationale undergirding the Court's dismissal here. It is not the lack of detail as to each defendant's specific AFFF product lines that compels dismissal, but instead the complaint's failure to draw a connection between each specific defendant's products and the contamination at the Property. The Coleman court acknowledged this by flagging that "the unremarkable proposition that a plaintiff must allege that a particular defendant caused her injury" is distinct from improperly imposing a requirement on plaintiffs "to 'specifically identify' the products at issue." Id.

To survive motion to dismiss, the County must show "more than a sheer possibility" of liability. A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013). Because the County has not surpassed this threshold, the Court dismisses Counts I, II and III without prejudice.[5]

B.      **The County Has Not Sufficiently Alleged a Claim for Indemnification for the County's Costs and Damages in Count IV**

Tyco, Chemguard, National Foam and Buckeye further assert that the Court should dismiss the County's indemnification claim in Count IV because Massachusetts law limits the County's ability to recover only contribution for its response costs. D. 49 at 15-17; D. 52 at 1; D. 58 at 12-13. The Court agrees. The DEP issued a Notice of Responsibility to the County that required the

_____

[5] In their reply brief, Tyco and Chemguard further assert that Counts I, II and III must be dismissed because the County has not alleged any cognizable property damages under its negligence and breach of the implied warranty claims. D. 80 at 1-3. Because the Court dismisses Counts I, II and III for failure to state a claim, it need not consider this additional argument.

County to prepare and perform immediate response actions with respect to the release of PFOS to, at and from the Property pursuant to Mass. Gen. L. c. 21E. D. 1 ¶ 56; D. 43-4 at 2. Chapter 21E provides the DEP with an avenue to "make one liable party entirely responsible for a cleanup, leaving the final allocation of costs among all of the liable parties dependent on the outcome of a private action." Martignetti v. Haigh-Farr, Inc., 425 Mass. 294, 308 (1997). When such private actions are instituted pursuant to Chapter 21E, the case is treated as one for contribution, not one for indemnification. See id. at 306-09; see also Newly Weds Foods, Inc. v. Westvaco Corp., No. 99-5194-C, 2001 WL 1586691, at *3 (Mass. Super. Dec. 12, 2001) (explaining that "whether arising under a theory of negligence or strict liability, a claim under [Chapter 21E, Section 4] is best understood as an action for contribution among joint tortfeasors"). That is, "an action to recover response costs is viewed as one in which the plaintiff finds itself liable in tort to the government for the entire costs of the cleanup and therefore seeks to force other tortfeasors to contribute a share of those costs." Martignetti, 425 Mass. at 306-07. Thus, any response costs borne by the County pursuant to Chapter 21E that the County seeks to recover from Defendants is best considered a claim in contribution, not indemnification.

The County pleads its claim for common law indemnification in lieu of seeking contribution under Chapter 21E Section 4, but doing so does not save the claim from dismissal. "Chapter 21E is sui generis" and "creates a distinctive procedure to be followed solely for apportioning costs that are imposed on persons made liable by [Chapter 21E] itself." Id. at 313 n.35. In other words, there is no common law right to indemnification for response costs borne from the actions statutorily required under Chapter 21E because the legislation created a new duty that did not exist at common law. Thus, while the County may seek contribution to recover damages for its response costs, it cannot separately invoke common law indemnification.

The County relies upon Mailman's Steam Carpet Cleaning Corp. v. Lizotte, 415 Mass. 865 (1993) to defend against dismissal, but that case is inapposite. There, the Massachusetts Supreme Judicial Court held that one party could recover liability for costs paid under Mass. Gen. L. c. 21E but also pursue common law remedies that were "not dependent upon either actual or potential liability under G.L. c. 21E." Id. at 870. That is, the court concluded a party may bring any applicable common law claims against another entity when it seeks damages separate and apart from the clean-up costs associated with G.L. c. 21E. Id. at 869-70. That is not the case here. The County seeks common law indemnification for the response costs that fall under G.L. c. 21E because the complaint seeks to recover only for the costs of response actions and damage resulting from "investigation, clean-up, abatement, remediation and monitoring costs." D. 1 ¶ 77. For these reasons, the Court dismisses Count IV.

## C. The County Has Not Sufficiently Alleged a Claim for Contribution for its Costs and Damages in Count V

Defendants next contend that Count V, a claim for contribution under Mass. Gen. L. c. 231B, must be dismissed. E.g., D. 58 at 10-11.

First, Defendants assert that the County cannot move forward on this contribution claim because the County seeks damages for its own property damages and the County cannot be a joint tortfeasor in damage to its own property. D. 58 at 10. The Court disagrees. The complaint belies Buckeye's assertion that the County seeks contribution for its own property damages. Instead, as explained in the complaint and in the County's opposition, the County seeks costs and expenses that it paid for remediation to the contamination of the Town's property and its drinking water wells. D. 1 ¶¶ 78-80; D. 65 at 16. Thus, the Court will not dismiss on this basis.

Their second argument for dismissal stands on different ground. Defendants additionally assert that the County should have brought its contribution claim under Mass. Gen. L. c. 21E, D.

58 at 11, and the Court agrees. As explained above, the County cannot raise a common law claim when it seeks damages for the exact response costs that it paid pursuant to G.L. c. 21E on the basis that such a claim is not preempted. See Lizotte, 415 Mass. at 865-70. Unlike common law contribution, however, G.L. c. 21E has a set of notice and procedure requirements that are prerequisites to receiving contributing funds, see Mass. Gen. L. c. 21E § 4A(a), (c), with which the County has not demonstrated compliance.

Thus, the Court dismisses Count V on the basis that the contribution claim should be pursued via Mass. Gen. L. c. 21E.

**D.    The Court Declines to Dismiss the Declaratory Judgment Claim in Count VIII**

The County finally asserts a claim for declaratory judgment pursuant to Mass. Gen. L. c. 231A, § 1 in Count VIII. D. 1 ¶¶ 91-93. It is well established that "an actual controversy sufficient to withstand a motion to dismiss must appear on the pleadings" for a court to entertain such a petition for declaratory relief. Galipault v. Wash Rock Inv'rs., LLC, 65 Mass. App. Ct. 73, 83-84 (2005); see also Ly-Drouin v. Healthbridge Mgmt., LLC, No. 14-cv-13854-DJC, 2015 WL 3823615, at *5 (D. Mass. June 19, 2015). Here, since at least Counts VI and VII survive, the Court declines to dismiss this count, Count VIII.

**VIII.   Motions to Stay the Litigation**

**A.    The Court Will Not Stay the Litigation Pursuant to *Colorado River* Doctrine**

As an alternative to dismissal, 3M urges the Court to abstain and stay the litigation based upon Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). D. 43 at 22.

As a general principle, "federal courts must abide by their 'virtually unflagging obligation' to exercise their lawful jurisdiction and resolve the matters properly before them." Nazario-Lugo

v. Caribevisión Holdings, Inc., 670 F.3d 109, 114 (1st Cir. 2012) (quoting Colo. River, 424 U.S. at 817). Certain exceptional circumstances, however, will warrant departure from this broad mandate and will instead weigh in favor of staying the federal litigation. Id. at 114-15 (citing Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)). Abstention pursuant to Colorado River is one such exception. Id. at 115. Under Colorado River, federal courts are allowed "to stay or dismiss proceedings that overlap with concurrent litigation in state court." Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 21 (1st Cir. 2010). "Only the clearest of justifications," however, will warrant abstention and the district court's discretion should be "heavily weighted" against staying the litigation. Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 71 (1st Cir. 2005) (first quoting Colo. River, 424 U.S. at 819; then citing KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003)). The First Circuit has explained that a court may consider the following factors to determine exceptional circumstances that warrant Colorado River abstention:

> (1) whether either court has assumed jurisdiction over a *res;* (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

KPS & Assocs., Inc., 318 F.3d at 10 (citations omitted). "No one factor is meant to be determinative" and the Court must both take into account each factor in addition to keeping in mind that the overall presumption is in favor of exercising jurisdiction. Rio Grande, 397 F.3d at 71-72. If the balance of factors mandates abstention, the Court may then decide to stay the federal proceedings. Jiménez, 597 F.3d at 31.

Here, there would be no justification for a stay pursuant to Colorado River. First, a majority of the Colorado River factors do not weigh in favor of a stay. Indeed, the Court does not have jurisdiction over a *res* in this case, the federal and state forums are equally convenient, both actions

are in similar litigation phases, the state forum can protect every party's interests, the County's lawsuit against the Defendants is not vexatious or contrived and that the removal jurisdiction factor is irrelevant here. D. 43 at 24-25. Thus, the first, second, fourth, sixth, seventh and eighth factors do not weigh in favor of staying this matter pursuant to Colorado River and the Court need not consider them. Id.

Of the two remaining factors, the desirability to avoid piecemeal litigation—the third factor—does not weigh in favor of abstention. As the First Circuit has interpreted, "[c]oncurrent federal-state jurisdiction over the same action will necessarily involve some degree of 'routine inefficiency that is the inevitable result of parallel proceedings.'" Jiménez, 597 F.3d at 29 (quoting Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 16 (1st Cir. 1990)). Piecemeal litigation only tips the scales in favor of abstention where the practical effects of litigating the parallel actions create "an exceptional basis for surrendering federal jurisdiction." Nazario-Lugo, 670 F.3d at 116 (citing Jiménez, 597 F.3d at 29) (emphasis in original). The First Circuit has concluded that such exceptional circumstances exist when there is (1) a relevant federal statute in the case that mandates unified proceedings, Colo. River, 424 U.S. at 819-20; (2) an attempt to avoid unwieldy piecemeal litigation due to several unresolved state law issues, Rivera-Feliciano v. Acevedo-Vilá, 438 F.3d 50, 62 (1st Cir. 2006); (3) a risk that the federal litigation could become advisory or moot as a result of the pendency of the state court appellate proceeding, Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 10-11 (1st Cir. 2002); and (4) a difference in interpretations of an insurance policy that could leave the insured without appropriate coverage after years of payment, Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc., 751 F.2d 475, 477 (1st Cir. 1985); see Jiménez, 597 F.3d at 29 (examining each of the preceding four cases).

Here, the risk of piecemeal litigation in this case is routine and is not so exceptional as to warrant abstention until the state litigation is complete. There is no federal policy of unified proceedings at play here, no argument raised that there are unresolved state law questions at issue and no risk of the insurance policy concern previously raised before the First Circuit. Also, "it is not clear that the issues to be adjudicated in both courts are sufficiently similar so that there is a serious risk of conflicting findings or outcomes." Spark Energy Gas, LP v. Toxikon Corp., 864 F. Supp. 2d 210, 218 (D. Mass. 2012). Apart from the claims raised by the Town in the state court matter, the County is also pursuing damages for negligence and breach of warranty that stand apart from the litigation between the Town and the County. See, e.g., D. 1 ¶¶ 65, 70, 74; see also D. 63 at 18. Thus, the third factor does not tilt the balance in favor of staying this litigation.

Similarly, the fifth factor does not militate against exercising federal jurisdiction here. Although state law does govern the tort-based claims in this action, this alone does not persuade in favor of abstention. When there is a "garden variety federal diversity case requiring only the application of settled principles of state law," this factor does not weigh in favor of abstention. Nazario-Lugo, 670 F.3d at 119. Instead, it is only appropriate to defer to state court resolution when state law issues "present particularly novel, unusual or difficult questions of legal interpretation." Id. at 118 (quoting Elmendorf Grafica, Inc. v. D.S. Am. (E.), Inc., 48 F.3d 46, 52 (1st Cir. 1995)). Here, 3M provides no argument as to how this case involves more than garden variety settled principles of Massachusetts tort law and the Court does not otherwise glean any novel questions of law from the face of the complaint. See D. 43 at 25-26. Thus, the fifth Colorado River factor does not support a stay in this matter.

Accordingly, none of the Colorado River factors mandate a stay in this matter.

**B.      The Court Does Not Otherwise Stay the Litigation**

Defendants additionally requested that the Court stay this litigation even if it does not merit Colorado River abstention.  See D. 43 at 21-22; D. 49 at 19; D. 52 at 1; D. 58 at 14-15.

"[A] court, in its sound discretion, may stay any case pending before it as an exercise of its inherent power to control its own docket."  Cannavo v. Enter. Messaging Servs., Inc., 982 F. Supp. 54, 59 (D. Mass. 1997).  The Court's authority to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Bank of Am., N.A. v. WRT Realty, L.P., 769 F. Supp. 2d 36, 39 (D. Mass. 2011).  As a result, the determination "involves balancing the interests of the parties and the Court" such that the Court can choose to grant a stay if doing so is "likely to conserve judicial and party time, resources, and energy."  Id. (quoting Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936).  The Court can grant a stay even if the case does not fit within the formal strictures of staying the exercise of federal jurisdiction.  Bacardí Int'l Ltd., v. V. Suárez & Co., 719 F.3d 1, 14 (1st Cir. 2013).

In the instant matter, the Court declines to stay the litigation until the conclusion of the state court action involving the Town and the County.  Not only does the case not fall comfortably within one of the formal categories that justify a stay of federal litigation, but there is no other justification for granting a stay in this instance.

IX.    **Conclusion**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Tyco and Chemguard's request for judicial notice, D. 50, and GRANTS in part and DENIES in part United Tech's request for judicial notice, D. 56.  For the aforementioned reasons, the Court GRANTS IN PART 3M's motion to dismiss, D. 42, GRANTS IN PART Tyco and Chemguard's motion to

dismiss, D. 48, GRANTS IN PART United Tech's motion to dismiss, D. 54, and GRANTS IN PART Buckeye's motion to dismiss, D. 57, as follows:

1. Counts I, II, III are dismissed without prejudice;

2. Counts IV and V are dismissed;

3. The County may amend as to Counts VI and VII in light of the resolution of the state court action and must do so by January 18, 2018; and

4. Count VIII survives.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge